IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHADIJAH ABDUL-HAKEEM,<br><br>Plaintiff,<br><br>v.<br><br>SUMMERWOOD CORPORATION and OAK RESTAURANTS, LLC,<br><br>Defendants. | CIVIL ACTION NO. |

**COMPLAINT**

Plaintiff Khadijah Abdul-Hakeem files this Complaint against Summerwood Corporation and Oak Restaurants, LLC (collectively referred to as "Summerwood"), seeking relief from Summerwood's violations of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e, *et seq*.) and Pennsylvania law, and in support states the following:

**PRELIMINARY STATEMENT**

1. For nearly six months, Khadijah Abdul-Hakeem was forced to have sex with and sexually gratify her immediate supervisor at work to continue her employment with Summerwood.

2. This abusive, coercive, and sexually harassing arrangement was known by Abdul-Hakeem's coworkers and managerial-level employees at Summerwood.

3. In January 2026, Abdul-Hakeem had enough and stood up for herself. For the next three months, Abdul-Hakeem made repeated reports to Summerwood about the months of sexual harassment she was forced to endure. In response, Summerwood cut her hours, disciplined her for exhibiting signs of trauma at work, and terminated her employment.

4. When Abdul-Hakeem initiated legal proceedings, Summerwood responded by mocking her trauma, calling her a "crybully," and indicating that she was a "person who falsely claims to be a victim or who feigns emotional pain in order to manipulate, coerce, or threaten others."

5. Survivors of sexual assault and sexual harassment in the workplace are not required to process their trauma in a way that is palatable to their employers.

6. Abdul-Hakeem is filing this action to address the sexual harassment, hostility, and retaliatory actions she was subjected to by Summerwood in 2026. Abdul-Hakeem is also filing this action to pursue meaningful change within Summerwood so that other employees can work in restaurants free from sexual harassment and the prejudices Summerwood apparently has towards victims of sexual assault and sexual harassment.

## THE PARTIES

7. Plaintiff Abdul-Hakeem is an adult individual who resides in King of Prussia, Pennsylvania.

8. Defendant Summerwood Corporation is a corporation organized under Pennsylvania law with headquarters located at 200 Barr Harbor Drive, Suite 100, Conshohocken, Pennsylvania 19428.

9. Defendant Oak Restaurants, LLC, is a corporation organized under Pennsylvania law with headquarters located at 200 Barr Harbor Drive, Suite 100, Conshohocken, Pennsylvania 19428.

10. At all relevant times, Summerwood collectively constituted Plaintiff's employers under the joint and/or single employer doctrine. Upon information and belief, Summerwood

shared common management, had interrelated operations, and collectively controlled Plaintiff's job duties and responsibilities.

11. At all relevant times, Summerwood acted by and through its authorized agents, servants, workmen, and/or employees, who were acting within the course and scope of their employment with Summerwood and in furtherance of Summerwood's business.

12. At all relevant times, each Defendant continuously employed more than 15 employees and was a covered employer as defined by Title VII.

13. At all relevant times, Abdul-Hakeem constituted an employee of Summerwood as defined by Title VII.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the claims of Abdul-Hakeem arise under the laws of the United States and Abdul-Hakeem is seeking redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Abdul-Hakeem's federal claims that they form part of the same case or controversy.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to Abdul-Hakeem's claims occurred at a Taco Bell restaurant located in Lansdale, Pennsylvania which was owned and operated by Summerwood.

## FACTUAL BACKGROUND

### A. Summerwood's Joint Employer Relationship

16. Summerwood is a company that owns and operates Taco Bell, KFC, Pizza Hut and Long John Silver's franchise restaurants in six states through a variety of subsidiary companies.

17. Despite operating through a variety of subsidiary companies, all employee-related functions are controlled by executives and human resources personnel at Summerwood Corporation. For example, all entry-level employees begin their work for the company as Team Member. All screening, hiring, and training of Team Members is handled by Summerwood Corporation.

18. From there, Team Members can be promoted to Shift Leader, Associate Restaurant General Manager, Lead Associate Manager, and then Restaurant General Manager. All screening, hiring, and training of these managerial level employees within a franchise restaurant is handled by Summerwood Corporation.

19. Outside of the franchise restaurant, employees can work throughout multiple Summerwood franchise restaurants as either a Restaurant Training Manager, Project Coach, Area Coach, Market Coach, or Vice President of Operations.

20. The terms and conditions of employment for all Summerwood employees are handled by Summerwood Corporation. As a result, decisions like hiring, firing, discipline, demotions, raises, and transfers are handled by Summerwood Corporation.

B. Promising Start to Abdul-Hakeem's Employment with Summerwood

21. On April 21, 2025, Abdul-Hakeem began her employment with Summerwood as Team Member. Initially, Abdul-Hakeem began working at one of Summerwood's Taco Bell restaurants in Pennsylvania located at 909 Second Street Pike, Richboro, Pennsylvania 18954.

22. In June 2025, Abdul-Hakeem transferred to a Taco Bell restaurant that was owned and operated by Summerwood at 1700 North Broad Street, Lansdale, Pennsylvania 19446.

23. Abdul-Hakeem excelled as Team Member and was promoted to the position of Service Champion, which put her in more customer-facing roles such as cashier and drive-thru

window. In addition, Abdul-Hakeem frequently maintained the dining room and generally did whatever was needed to provide customers with the best dining experience.

24. Abdul-Hakeem really enjoyed the customer-facing job duties as Service Champion, and she continued to excel in that role until she encountered issues with her immediate supervisor ("A.C.").

C. Quid Pro Quo Sexual Harassment Abdul-Hakeem was Forced to Endure

25. During Abdul-Hakeem's employment with Summerwood, A.C. knew that Abdul-Hakeem was struggling financially and with housing issues. As a result, Abdul-Hakeem was desperate to keep her job with Summerwood and A.C. took advantage of her situation as soon as she was transferred to the Taco Bell located at 1700 North Broad Street.

26. A.C. began pressuring Abdul-Hakeem to have sex with him even though he was her immediate supervisor. At times, A.C. told Abdul-Hakeem that if she did not have sex with him, he would make problems for her at work, including reducing the number of hours she was scheduled to work.

27. A.C. then repeatedly coerced Abdul-Hakeem to have sex with him during and outside of work the next few months. While this was happening, A.C. openly discussed with other Summerwood employees that he was having sex with Abdul-Hakeem.

28. Upon information and belief, A.C. had other sexual relationships with subordinate employees while he was employed by Summerwood in a managerial capacity.

29. Upon information and belief, Summerwood was aware that A.C. had sexual relationships with subordinate employees while he was employed by Summerwood in a managerial capacity.

30. With each shift, Abdul-Hakeem had to make this excruciating decision: submit to A.C.'s sexual demand or lose her job and be forced to live on the streets.

31. For nearly six months, Abdul-Hakeem was forced to endure this quid-pro-quo sexual harassment by A.C. The resulting trauma took a toll on Abdul-Hakeem, which occasionally left her feeling despondent, angry, and hopeless at work as she was frequently required to work alongside A.C.

D. Summerwood's Retaliation against Abdul-Hakeem

32. On January 19, 2026, Abdul-Hakeem had the courage to reject one of A.C.'s sexual advances at work. In response, A.C. retaliated against Abdul-Hakeem by reporting her to General Manager Steve Petrillo for being disruptive at work.

33. Upon information and belief, A.C. attempted to have GM Petrillo discipline and/or terminate Abdul-Hakeem's employment with his January 2026 report.

34. In response, Abdul-Hakeem reported A.C.'s behavior to GM Petrillo, which included discussions about A.C. repeatedly coercing Abdul-Hakeem to have sex with him at and outside of work.

35. On January 20, 2026, Abdul-Hakeem also reported A.C. to Summerwood via the company's We Care Hotline. Abdul-Hakeem also reported A.C. to Summerwood via another General Manager. Later that day, A.C. told Abdul-Hakeem to keep his name out of her mouth because whoever she reported him to would simply tell A.C. At this point, Abdul-Hakeem was worried that there was nothing Summerwood could do to protect her from A.C.

36. On January 21, 2026, Lateesha Williams (Area Coach) called Abdul-Hakeem and asked about the reports she made about A.C. Abdul-Hakeem communicated with Williams and provided her with information to support her claims that A.C. had (a) coerced her into having sex

with him at and outside of work for nearly six months and (b) retaliated against her when she refused to have sex with him at work. In response, Summerwood asked Abdul-Hakeem to transfer Taco Bell locations while keeping A.C. at the 1700 North Broad Street location, in his managerial-level position.

37. Abdul-Hakeem rejected Summerwood's request to transfer to another Taco Bell location. Abdul-Hakeem explained that she was still dealing with financial difficulties and that it would be a hardship if she was transferred to the Taco Bell restaurant Summerwood proposed.

38. In fact, Abdul-Hakeem had been told earlier in her career that if she permanently transferred locations, it would result in a reduction in pay. Instead, Abdul-Hakeem was content receiving shift assignments without necessitating a permanent transfer, which Summerwood rejected.

39. On January 22, 2026, Abdul-Hakeem reported to work at the Taco Bell located at 1700 North Broad Street. When she arrived, GM Petrillo told Abdul-Hakeem that she could not work that shift because A.C. was also working that day. GM Petrillo explained to Abdul-Hakeem that Summerwood would not permit Abdul-Hakeem and A.C. to work on the same shift. GM Petrillo then sent Abdul-Hakeem home.

40. On January 23, 2026, Summerwood again requested Abdul-Hakeem to accept a permanent transfer to another Taco Bell location, which would involve a reduction in pay. Abdul-Hakeem, again, rejected this request to transfer.

41. On January 24, 2026, Summerwood began assigning A.C. to work shifts at the Taco Bell located at 931 North Wales Road. As a result, Summerwood effectively prevented Abdul-Hakeem from working at the two Taco Bell restaurants that were closest to her.

42. Over the next few weeks, multiple Summerwood representatives (including two Regional Managers) tried to have Abdul-Hakeem transfer to Taco Bell restaurants that were extremely difficult for her to travel to.

43. After Abdul-Hakeem repeatedly rejected Summerwood's transfer proposals, Summerwood reduced her assigned work hours from 65-80 hours (every two weeks) to 45-55 hours (every two weeks). In addition, Summerwood told Abdul-Hakeem that she would no longer be permitted to pick up shifts at the Taco Bell restaurant closest to her which was located at 931 North Wales Road.

44. On February 6, 2026, Abdul-Hakeem communicated her prior reports about A.C., Summerwood's purported investigation of A.C., and Summerwood's attempts to transfer her to another restaurant with HR Specialist Anissa Mitchell. After that initial meeting, Abdul-Hakeem had additional communications with Mitchell in February, and Mitchell promised that she would investigate Abdul-Hakeem's claims about A.C.

45. On March 30, 2026, Abdul-Hakeem finally met with Mitchell to discuss her prior reports. During that meeting, Area Coach Mallory Campbell was also present. However, instead of discussing Abdul-Hakeem's prior reports about A.C. and the retaliatory behavior Abdul-Hakeem subsequently endured, Summerwood issued Abdul-Hakeem three Corrective Action Notices for (1) unprofessional behavior/performance, (2) violating store procedures, and (3) clocking in late.

46. Abdul-Hakeem tried to provide context to the purported incidents behind the three Corrective Action Notices, notably that Abdul-Hakeem was processing trauma from months of sexual harassment, but Mitchell and Campbell disregarded her explanations.

47. On April 5, 2026, Abdul-Hakeem made another report to Summerwood's We Care Hotline, stating that Summerwood had failed to take prompt corrective action in response to her prior complaints about A.C. while also noting that she had been subjected to retaliatory actions by the company, which included increased scrutiny at work and reduction of work hours.

48. Nine days later, on April 14, 2026, Summerwood terminated Abdul-Hakeem's employment for insubordination.

49. The stated reasons for Abdul-Hakeem's firing were pretext. By terminating Abdul-Hakeem's employment, Summerwood failed to apply its workplace policies in a uniform and fair manner.

E. Exhaustion of Abdul-Hakeem's Administrative Remedies

50. On May 8, 2026, Abdul-Hakeem filed a Charge of Discrimination against Summerwood with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII and the Pennsylvania Human Relations Act due to sexual harassment, discrimination, and retaliation.

51. Abdul-Hakeem's Charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

52. By letter dated September 24, 2026, the EEOC notified Abdul-Hakeem of her right to file a civil action against Summerwood.

53. Abdul-Hakeem has initiated this civil action within 90 days of receiving the EEOC's Right to Sue letter.

54. Abdul-Hakeem has exhausted her administrative remedies under federal law.

## STATEMENT OF CLAIMS

### COUNT I

Violations of Title VII
(Plaintiff v. Defendants)

55. Abdul-Hakeem incorporates by reference the allegations in Paragraphs 1 through 54, as if fully set forth herein.

56. A.C. was Abdul-Hakeem's supervisor and he subjected Abdul-Hakeem to repeated sexual advances for nearly six months.

57. A.C.'s sexual advances were not welcomed by Abdul-Hakeem. When Abdul-Hakeem finally stood up for herself in January 2026, Abdul-Hakeem was subjected to harassing and retaliatory conduct by A.C. and Summerwood.

58. Abdul-Hakeem's refusal to have sex with A.C. at work in January 2026 resulted in a reduction of Abdul-Hakeem's hours at work and eventually, the termination of her employment. In addition, for nearly six months, Abdul-Hakeem was subjected to a hostile work environment because A.C. conditioned Abdul-Hakeem's continued employment at Summerwood on having sex with him, on demand, at the restaurant and outside of work.

59. The acts and omissions by Summerwood that are described in this Complaint constitute sexual harassment under Title VII.

60. As a proximate result of Summerwood's conduct, Abdul-Hakeem has or will suffer substantial harm, for which Abdul-Hakeem seeks general, compensatory, consequential, and punitive damages.

**COUNT II**
Violations of Title VII
(Plaintiff v. Defendants)

61. Abdul-Hakeem incorporates by reference the allegations in Paragraphs 1 through 60, as if fully set forth herein.

62. The acts and omissions by Summerwood that are described in this Complaint constitute retaliation under Title VII, which includes Defendant's reduction of Abdul-Hakeem's work hours; discipline of Abdul-Hakeem for exhibiting signs of trauma after enduring nearly six months of quid pro quo sexual harassment; and termination of Abdul-Hakeem's employment.

63. The acts and omissions by Summerwood that are described in this Complaint constitute violations of Title VII.

64. As a proximate result of Summerwood's conduct, Abdul-Hakeem has or will suffer substantial harm, for which Abdul-Hakeem seeks general, compensatory, consequential, and punitive damages.

**COUNT III**
Negligent Supervision
(Plaintiff v. Defendants)

65. Abdul-Hakeem incorporates by reference the allegations in Paragraphs 1 through 64, as if fully set forth herein.

66. Abdul-Hakeem was subjected to nearly six months of quid pro quo sexual harassment by A.C. Throughout this nearly six-month period, A.C. openly discussed this sexual arrangement at work and forced Abdul-Hakeem to have sex with him at the restaurant.

67. Upon information and belief, Summerwood was aware of A.C.'s sexual harassment of Abdul-Hakeem and yet did not take adequate measures to prevent such misconduct from recurring in the workplace.

68. Upon information and belief, Summerwood was aware that A.C. had previously had sexual relationships with employees under his supervision and control, in violation of Summerwood's own policies.

69. Summerwood owed a duty to Abdul-Hakeem to use reasonable care when determining whether to retain A.C. after it became aware that A.C. was forcing Abdul-Hakeem to have sex with him at work from June 2025 through January 2026.

70. Summerwood owed a duty to Abdul-Hakeem to use reasonable care when determining whether to retain A.C. after Abdul-Hakeem formally reported A.C. in January 2026. Instead, Abdul-Hakeem was forced to work shifts alongside A.C., who remained in a managerial-level position.

71. Upon information and belief, Summerwood was aware of multiple instances in which A.C. was engaging in sexual relationships with other subordinate employees at work. Summerwood's subsequent failure to take reasonable action about A.C.'s ongoing sexually predatory behavior resulted in months of sexual harassment that Abdul-Hakeem was forced to endure. This constituted a breach of Summerwood's duties to Abdul-Hakeem.

72. Summerwood was grossly negligent because its behavior entailed a conscious disregard and indifference to Abdul-Hakeem's safety and rights. Summerwood engaged in intentional misconduct because it had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Abdul-Hakeem would result. Despite that knowledge, Defendant intentionally pursued a course of conduct resulting in injuries and damages to Abdul-Hakeem. Consequently, Abdul-Hakeem is entitled to and seeks punitive damages.

73. As a proximate result of Summerwood's breach of its duties regarding the continued employment of A.C., Abdul-Hakeem has or will suffer substantial harm, for which Abdul-Hakeem seeks general, compensatory, consequential, and punitive damages.

## REQUESTS FOR RELIEF

Accordingly, Abdul-Hakeem requests that this Court enter judgment on her behalf and enter an order directing the award of other relief, as follows:

A. Finding that Summerwood violated Title VII;

B. Finding that Summerwood engaged in tortious conduct which violated Pennsylvania law concerning the negligent supervision of A.C.;

C. Awarding Abdul-Hakeem back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make her whole;

D. Awarding Abdul-Hakeem compensatory damages for pain, humiliation, emotional distress, and damage to reputation;

E. Awarding Abdul-Hakeem punitive damages under Title VII;

F. Awarding Abdul-Hakeem attorneys' fees and costs;

G. Awarding Abdul-Hakeem pre- and post-judgment interest as provided by law; and

H. Awarding Abdul-Hakeem any other relief to which she is entitled and/or which this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

Respectfully submitted,

/s/ Sammy Sugiura

Sammy Y. Sugiura
PA ID No. 209942
Greenberg Gross LLP
1650 Market Street, Suite 3600,
Philadelphia, PA 19103
SSugiura@GGTrialLaw.com

**Counsel for Plaintiff**